# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | )  |  |
|---|---|---|
| A.G., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-01143 (ABJ) |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **MEMORANDUM OPINION**

Plaintiffs Daniel Grosse and Vivian Cavalieri, on behalf of their minor son, A.G., brought this action under the Individual With Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq*. A Hearing Officer found that the District of Columbia denied A.G. a free appropriate public education ("FAPE") in violation of the IDEA because it failed to provide A.G. with an individualized education plan ("IEP"), in particular, an IEP that included appropriate related services in the form of counseling, social work, psychological services, and parent counseling services (collectively, "wrap-around services"). The Hearing Officer directed the District of Columbia Public Schools ("DCPS") to provide such services in the future, but he declined to reimburse plaintiffs for the costs of the wrap-around services they had previously been forced to obtain on their own on the grounds that they failed to present evidence on those costs at the hearing. Plaintiffs appealed that decision by bringing this action against defendants District of Columbia, then-Mayor of the District of Columbia Adrian M. Fenty, and then-Chancellor of DCPS Michelle A. Rhee.

The parties have each filed motions for summary judgment and plaintiffs have moved for leave to submit additional evidence. For the following reasons, the Court will grant plaintiffs' motion for summary judgment and their motion to submit additional evidence, and will deny defendant's motion for summary judgment.

I.   **Background**

A.G. was found eligible to receive special education and related services[1] by DCPS as a student with an emotional disability. Pls.' Statement of Material Facts ("SMF") ¶ 1. Pursuant to a prior Hearing Officer Determination ("HOD"), DCPS funded A.G.'s attendance at Wediko, a therapeutic, residential school in New Hampshire. *Id.* ¶ 2. In December 2007, Wediko discharged A.G. and its staff made several recommendations for his discharge and aftercare so that A.G. could live successfully at home. The recommendations included that A.G. continue therapy and be "associated with a non-parental adult to act as respite and/or prosocial facilitator outside of the home and school." *Id.* ¶ 4.

In January 2008, a multidisciplinary team ("MDT") met to discuss A.G.'s placement at The Frost School, a District-approved non-public school in Montgomery County, Maryland. *Id.* ¶¶ 1, 4. But the MDT deferred development of an IEP so that they could observe A.G. further. *Id.* ¶ 8; Def.'s SMF ¶ 4. Meanwhile, plaintiffs began paying themselves for the wrap-around services A.G. needed during the last week of February 2008. Def.'s SMF ¶ 5; Administrative Record ("AR") at 9–10. A.G. obtained these services, including mentoring and family counseling, outside of school from The Capital Region Children's Center. Def.'s SMF ¶ 5; AR at 9–10.

---

1   "Related services" include, among others, psychological services, physical and occupational therapy, social work services, and counseling services "as may be required to assist a child with a disability to benefit from special education."  20 U.S.C. § 1401(26)(A).

On November 17, 2008 – almost a year after A.G. had been discharged from the therapeutic boarding school – DCPS convened a meeting, and the team drafted A.G.'s first IEP. Pls.' SMF ¶ 20; AR at 10. Plaintiffs requested that the IEP include wrap-around services, and they requested reimbursement for the services for which they had already paid. Pls.' SMF ¶ 23; AR at 10. But the IEP developed in that meeting did not include the wrap-around services. AR at 10. Plaintiffs then wrote a letter on December 12, 2008 to DCPS requesting that it reimburse and prospectively fund the wrap-around services, but they did not receive a response. AR at 11.

On February 9, 2009, plaintiffs filed a due process complaint against DCPS requesting prospective wrap-around services and reimbursement for the cost of those that had been privately provided since February 2008. Pls.' SMF ¶ 28; Def.'s SMF ¶ 12. A hearing was held on March 19, 2009, at which both parties presented testimony. AR at 1. On April 9, 2009, the Hearing Officer determined that A.G. was denied a FAPE by DCPS's failure to establish an IEP that included the full scope of appropriate related services, and he also found that the wrap-around services were necessary for A.G. to remain in the less restrictive setting at Frost. AR at 14-15. Although the Hearing Officer found that plaintiffs would be due reimbursement for any costs incurred in providing wrap-around services for the prior year, he denied reimbursement because plaintiffs "failed to present any evidence of what those costs were." AR at 15–16.

On June 22, 2009, plaintiffs filed this action seeking reimbursement for the wrap-around services the parents had provided, and also seeking attorneys' fees and costs, including the fees and costs of this action. Compl. at 12. On January 15, 2010, the Court dismissed with prejudice all claims against defendants Adrian Fenty and Michelle Rhee, as well as the claims brought pursuant to 42 U.S.C. § 1983. On June 25, 2010 plaintiffs moved for summary judgment [#11]

and on July 26, 2010 defendant District of Columbia filed a cross motion for summary judgment [#14].

On June 21, 2011, plaintiffs moved for leave to file additional evidence consisting of the invoices for the therapeutic wrap-around services provided by The Capital Region Children's Center [#21]. On June 24, 2011, plaintiffs moved to amend their motion for leave to file additional evidence to include additional legal authority [#22], which the Court granted separately on July 1, 2011.

## II. Standard of Review

### A. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id*. at 324 (internal quotations omitted). The existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation. *Id*. *See also Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

"The rule governing cross-motions for summary judgment . . . is that neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion." *Sherwood v. Washington Post*, 871 F.2d 1144, 1148 n.4 (D.C. Cir. 1989), quoting *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982). In assessing each party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.

### B. Individuals with Disabilities Education Act

Under the IDEA, a party aggrieved by a hearing officer's decision may bring a civil action challenging it. 20 U.S.C. § 1415(i)(2)(A). A reviewing court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). The party challenging the administrative decision has the burden of "persuading the court that the hearing officer was wrong." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005), quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988).

Under the preponderance-of-the-evidence standard this Court does not have authority to conduct a *de novo* review, see *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982), and the Court must give "due weight" to the hearing officer's determination. *Stanton ex rel. K.T. v. District of Columbia*, 680 F. Supp. 2d 201, 205 (D.D.C. 2010). But less deference must be given to the hearing officer's decision than is the case in a conventional administrative proceeding, and a hearing decision "without reasoned and specific findings deserves little deference." *Reid*, 401 F.3d at 521, quoting *Kerkam v. Superintendent, D.C. Pub. Schs.*, 931 F.2d 84, 87 (D.D.C. 1991).

5

At bottom, the Court is "obligated by IDEA to ensure that relief set forth in the administrative award was 'appropriate,'" which confers "broad discretion" on the Court. *Id.* at 521–22, citing *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 15–16 (1993). *See also School Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369 (1985) (holding that IDEA confers "broad discretion" on the court to determine appropriate relief).

When no additional evidence is introduced in a civil suit seeking review of a hearing officer's decision, a motion for summary judgment operates as a motion for judgment based on the evidence compromising the record. *N.S. ex rel. Stein*, 709 F. Supp. 2d at 66. Since neither party introduced additional evidence in support of its motion for summary judgment in this case, the Court views the pending cross motions to be motions for judgment based on the record below. The additional evidence that plaintiffs have recently sought to introduce will be considered only in connection with future proceedings to determine the amount of that judgment.

### III. Analysis

#### A. The Hearing Officer's Decision

The Hearing Officer concluded that DCPS denied A.G. a FAPE when it failed to provide him with an IEP, "including appropriate related services in the form of counseling services, social work services, psychological services, and parent counseling services, referred to by the Petitioners as 'wrap-around' services . . . from February 2008 to the present." AR at 15. The ruling on that point was unequivocal. In other words, the plaintiffs prevailed in their claim that DCPS should have been providing A.G. with the services that they went out and obtained on their own. But the Hearing Officer did not order reimbursement of those costs as part of his determination – the relief he provided was prospective only. Plaintiffs urge this Court to order

6

DCPS to pay the costs they incurred, contending that the Hearing Officer's finding of a violation requires a remedy.

Defendant contends that the Hearing Officer's decision should stand. It argues here that plaintiffs' failure to notify DCPS in February 2008 that they were funding the services themselves bars them from obtaining reimbursement later. Def.'s Mot. for Summ. J. at 11.[2] But the Hearing Officer did not deny reimbursement on those grounds. Indeed, he explicitly considered and rejected that argument: "While there is merit to the notion that the Petitioners did not request the services from the Respondent before providing them and therefore should not be reimbursed, there are three points which defeat that position." AR at 14.

The Hearing Officer noted first that any failure to notify DCPS should not be determinative because at the time, "there was no public supervision occurring and no IEP in place." *Id.* He also pointed out that DCPS failed to provide plaintiffs with due process when it did not respond to their written request for reimbursement. Thus, he observed, it was reasonable to conclude that if the plaintiffs had requested the services earlier in the year, DCPS "would have failed to provide due process then, too." *Id.* at 14–15. Finally, the Hearing Officer reasoned that there are no regulations that impose notice requirements on parents seeking related services similar to those that call for notice in advance of unilateral placements in private schools. *Id.* at 15 (citing 34 C.F.R. § 300.148). He therefore concluded that "it cannot be assumed" that those procedures and limitations were intended to apply to related services. *Id.* Given the record before the Court, and the reasons set forth by the Hearing Officer, the preponderance of the

---

2   Under the IDEA, reimbursement for placement in "private schools without consent of or referral by the public agency" may be reduced or denied if the parents (1) failed to inform the IEP team of their rejection of the proposed services; (2) failed to give notice before taking private action; or (3) when the Court determines the parents' actions were unreasonable. 20 U.S.C. § 1412(a)(10)(C)(iii).

7

evidence shows that plaintiffs were entitled to reimbursement for wrap-around services. This is true even analyzing the facts in light most favorable to the defendant.

The real dispute here is whether the Hearing Officer – even after finding that the plaintiffs deserved reimbursement – properly denied that reimbursement on the grounds that plaintiffs failed to present evidence of their costs during their case-in-chief. There can be no dispute that the Hearing Officer determined that DCPS denied A.G. a FAPE, and that determination, which is supported by the administrative record, is not being challenged here. The Court finds that the Hearing Officer improperly refused to receive the cost information that was proffered by the plaintiffs, and that the denial of reimbursement must be overturned.

The record concerning the Hearing Officer's exclusion of the evidence is not extensive. At the outset of the hearing, the Hearing Officer stated:

> [I]f there are violations and I'm looking at a remedy, I would need to know how much would be owed to the parents for the services they've paid for and why future services of this sort are necessary.

Tr. at 6–7. Near the conclusion of the hearing, after defendant concluded its case, plaintiffs attempted to address the Hearing Officer's need for this information:

> Counsel for Plaintiffs: Yes. I have a quick question. You had asked at the beginning for some information on the cost. Is that something you'd like – I can provide, like a –
>
> Hearing Officer: Well, you haven't put it into the record. So it's not something I have.
>
> Counsel for Plaintiffs: Right. I mean –
>
> Hearing Officer: I'm not going to allow in additional evidence now that we've – you've rested your cases.
>
> Counsel for Plaintiffs: Okay.

Tr. at 341.

Plaintiffs offered again to provide the Hearing Officer with evidence of costs in their closing brief:

> The Hearing Officer inquired as to the cost of the services provided to [A.G.]. The parents note that there are currently no documents in evidence that provide this information. However, if the cost of the services is determinative to the Hearing Officer's ruling, the parents are prepared to provide additional evidence or testimony as to the amount, which the Hearing Officer has the authority to request.

AR at 189 n.13. In his decision, the Hearing Officer acknowledged plaintiffs' offer to provide the additional information, but he again refused to admit it into evidence. "[I]t is unclear why, when the Petitioner's primary relief sought was reimbursement for these services, this was not prepared and presented at the hearing. . . . It is now late in the game to offer what should have been offered in the first instance or even in the complaint itself." AR at 16 n.11

At bottom, it was plaintiffs who bore the responsibility to supply the evidence in support of the relief they were seeking, and here, their efforts to introduce evidence of costs were somewhat half-hearted.[3] But the IDEA emphasizes that "a decision made by a hearing officer shall be made on *substantive* grounds based on a determination of whether the child received a free appropriate public education." 20 U.S.C. § 1415(f)(3)(E)(i) (emphasis added). Moreover, "[t]he education of a special needs child . . . cannot be forfeited by lawyering when the facts and needs of the child are clearly revealed in the record and findings of the Hearing Officer." *Gill v. District of Columbia*, 751 F. Supp. 2d 104, 114 (D.D.C. 2010). Once a hearing officer finds that a school system has violated the IDEA by denying a student a FAPE, the parents are entitled to retroactive reimbursement for expenditures that they have incurred in providing their child with

---

3     Inexplicably, even after their problems at the hearing level. plaintiffs neglected to provide the Court with the cost information as part of their Complaint or their Motion for Summary Judgment. It was only after the Court raised the issue at the status conference that plaintiffs moved to submit the cost information. *See* Docket # 21.

proper educational services. *See Walker v. District of Columbia*, 969 F. Supp. 794, 796 (D.D.C. 1997) ("If a parent pays for educational placements or related services to which a child is later found to be entitled, the school system must reimburse the parent."), citing *Burlington*, 471 U.S. at 369.

Here, the Hearing Officer found that A.G. was denied a FAPE and that his parents were therefore entitled to reimbursement for wrap-around services. At that point it was necessary to receive evidence and use it to fashion a case-specific, appropriate remedy for defendant's violation. But the Hearing Officer adopted a dismissive, superficial approach instead. His decision gave plaintiffs merely an "empty victory," *see Carter*, 510 U.S. at 12, quoting *Burlington*, 471 U.S. at 370, that was "contrary to IDEA's guarantee of a 'free appropriate public education.'" *Id. See also Forest Grove Sch. Dist. v. T.A.*, 129 S. Ct. 2484, 2494–95 (2009) ("Without the remedy respondent seeks, a 'child's right to a *free* appropriate education . . . would be less than complete.'"), quoting *Burlington*, 471 U.S. at 370. And his refusal to admit evidence because plaintiffs had technically concluded their case ran afoul of the statutory mandate that his decision "be made on substantive grounds." 20 U.S.C. § 1415(f)(3)(E)(i).

In addition, the Court's review of the transcript reveals that the procedural rigidity that the Hearing Officer invoked to justify his ruling was not evident elsewhere in the hearing. The Hearing Officer did not require the plaintiffs to formally "rest" and he did not use that term himself at the conclusion of plaintiffs' evidentiary presentation.

> Hearing Officer: Okay. Thank you very much. Was that – you only have the three witnesses? Okay.
>
> Plaintiffs' counsel: That's correct.
>
> Hearing Officer: All right.

Tr. at 219–20. DCPS concluded its case in a similarly informal manner. Tr. at 338. At that point, the Hearing Officer simply went on to discuss some of the legal issues for which he was seeking additional briefing, Tr. 338–40, and the short colloquy with plaintiffs' counsel about the cost information ensued. Tr. 341.

Furthermore, the Hearing Officer's initial comment to counsel was not a model of clarity. His statement – "if there are violations and I'm looking at a remedy, I would need to know how much would be owed to the parents for the services they've paid for . . . ," Tr. at 6 – could have been heard as the defendant characterizes it: an admonition to plaintiffs of the need to submit the appropriate documentation during their case in chief. But after reading the cold record, the Court notes that his use of the word "if," coupled with the present progressive tense ("I am looking") and the conditional tense ("I would need") can also be fairly interpreted to be referring to a later point in the proceedings which may or may not occur. So while the Hearing Officer did put plaintiffs on notice that he expected to see such evidence at some point, and while there is no question that it was plaintiffs who bore the burden to present the evidence that would support their case, the Court finds that the Hearing Officer unnecessarily adhered to procedural formalities when he should have decided the matter on substantive grounds.

For these reasons, the Court finds that the Hearing Officer's denial of reimbursement on this record, and his decision to refuse to admit evidence of the plaintiffs' actual costs, are only entitled to limited deference and need not govern here. The Hearing Officer did not make the sort of fact based, credibility-dependent finding for which a greater level of deference is often appropriate. The preponderance of the evidence, even in light most favorable to defendants, demonstrates that plaintiffs are entitled to a remedy. Accordingly, defendant's motion for

summary judgment will be denied, and plaintiffs' motion for summary judgment will be granted insofar as plaintiffs are entitled to reimbursement for the costs of the wrap-around services.

### B. The Appropriate Remedy

Courts act in equity when remedying IDEA violations. *Reid*, 401 F. 3d at 523–24. "The essence of equity jurisdiction is to do equity and … mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it." *Id.* (internal quotations omitted). The Court has broad discretion to "hear additional evidence" and "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C).

In *Gill*, the hearing officer found the plaintiff was denied a FAPE, but declined to award relief because plaintiffs failed to propose fact-specific relief to compensate plaintiff. 751 F. Supp. 2d 104. The court concluded that it was appropriate to hear additional evidence concerning the appropriate compensatory education due to plaintiff. *Id.* at 114, citing *Reid*, 401 F.3d at 526. Similarly here, while plaintiff failed to provide the evidence to the Hearing Officer, it is within this Court's discretion to receive the additional evidence needed to fashion appropriate relief for the denial of a FAPE that he found. Plaintiffs are owed a remedy, and they will be given the opportunity to proffer evidence on what that remedy should be.

In light of the "case-specific flexibility" inherent in fashioning an equitable remedy, *Reid*, 401 F.3d at 524, the Court will grant plaintiffs' motion to submit the additional evidence regarding costs they incurred for wrap-around services. The Court will give defendant 21 days to respond or submit any evidence it wishes the Court to consider that is related to the amount now owed to plaintiffs for reimbursement for wrap-around services.

### C. Attorneys' Fees

Plaintiffs also seek attorneys' fees and costs for the underlying due process hearing, as well as attorneys' fees and costs for bringing the instant action. Under the IDEA, this Court has the discretion to "award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party" in an administrative proceeding. 20 U.S.C. § 1415(i)(3)(B). In other words, if the plaintiff seeking attorneys' fees is a prevailing party, the Court must determine whether the attorneys' fees are reasonable. *Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 100 (D.D.C. 2010). Courts typically determine the reasonableness of attorneys' fees based on the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.*, quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Here, plaintiffs prevailed at the administrative hearing because the Hearing Officer found they were entitled to reimbursement and prospective funding for the wrap-around services. AR at 16. Accordingly, the Court will consider the reasonableness of a fee petition for the attorneys' fees and costs incurred in the underlying administrative action through the issuance of the HOD on April 9, 2009.

At the same time, plaintiffs may also submit evidence of the fees incurred in pursuing this action. The Court notes, though, that it has not yet made a determination concerning the reasonableness of such an award under the circumstances of this case. Plaintiffs will have 30 days to submit evidence of their attorneys' fees.

### IV. Conclusion

For the reasons stated above, and based upon the motions and oppositions submitted by the parties and the entire record of the case, the Court will deny defendant's cross-motion for

summary judgment [#14] and will grant plaintiffs' motion for summary judgment [#11], holding that as a remedy for defendant's denial of a FAPE under the IDEA, plaintiffs are entitled to reimbursement of the costs they incurred for A.G's wrap-around services. Accordingly, the Court will grant plaintiff's motion to submit additional evidence [#23], and will also give defendant 21 days to submit a supplemental brief and/or evidence if it contests the amount owed to plaintiffs in light of this ruling. A separate Order will issue.

/s/ Amy B. Jackson
AMY BERMAN JACKSON
United States District Judge

DATE: July 1, 2011